**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**Case No.: 0:19-CV-62843-AHS**

BRAD TUCKMAN,

      Plaintiff,

v.

WELLS FARGO BANK, N.A., JPMORGAN
CHASE BANK, N.A., and JOHN TORRES,

      Defendants.

_____/

**DEFENDANT WELLS FARGO BANK, N.A.'s MOTION TO DISMISS**
**OR, ALTERNATIVELY, TO STAY THE CASE AND COMPEL ARBITRATION**
**AND INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS

**Page**

Introduction.................................................................................................................. 1

Statement of facts........................................................................................................ 3

Argument .................................................................................................................... 5

I.     Tuckman's Allegations Must and Do Not Pass a Heightened Pleading
Standard ......................................................................................................... 5

II.    Count VI Must Be Dismissed Because Wells Fargo Did Not Know About
or Substantially Assist the Fraud Against Tuckman............................................. 6

     A.    The Complaint fails to plead facts sufficient to show that Wells
Fargo had actual knowledge of the fraud against Tuckman ..................... 7

     B.    The Complaint fails to allege that Wells Fargo substantially
assisted the fraud against Tuckman ......................................................... 8

III.   Count IV Must Be Dismissed Because the Complaint Fails to State a
Claim Against Wells Fargo for Civil Conspiracy to Defraud........................... 10

IV.   Count I Must Be Dismissed Because the Complaint Fails to State a Claim
Against Wells Fargo Under 18 U.S.C. § 1962(c................................................ 12

     A.    The Complaint fails to plead that Wells Fargo engaged in an illegal
enterprise or that Wells Fargo directed the affairs of the alleged
enterprise................................................................................................ 13

     B.    The Complaint fails to allege any predicate acts by Wells Fargo
sufficient to create a "pattern of racketeering activity ........................... 15

     C.    The Complaint fails to allege that Wells Fargo proximately caused
Tuckman's injuries................................................................................. 18

V.    Count II Must be Dismissed Because the Complaint Fails to State a Claim
Against Wells Fargo for Civil RICO Conspiracy Under 18 U.S.C. §
1962(d ............................................................................................................ 19

VI.   In the Alternative, the Case Should Be Stayed and Tuckman Should Be
Compelled to Arbitrate His Claims Against Wells Fargo ................................. 20

Conclusion ................................................................................................................ 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alhassid v. Bank of America, N.A.,*
  60 F. Supp. 3d 1302 (S.D. Fla. 2014) .....................................................................11

*American Dental Ass'n v. Cigna Corp.,*
  605 F.3d 1283 (11th Cir. 2010) ...............................................................12, 15, 19

*Am. United Life Ins. Co. v. Martinez,*
  480 F.3d 1043 (11th Cir. 2007) .................................................................................6

*Anza v. Ideal Steel Supply Corp.,*
  547 U.S. 451 (2006)..................................................................................................18

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)........................................................................................ *passim*

*Banco Latino Intern. v. Gomez Lopez,*
  95 F. Supp. 2d 1327 (S.D. Fla. 2000) ......................................................................11

*Begualg Inv. Mgmt, Inc. v. Four Seasons Hotel Ltd.,*
  No. 10-22513-CIV, 2011 WL 4434891 (S.D. Fla. Sept. 23, 2011)...........................6

*Bell Atlantic v. Twombly,*
  550 U.S. 544 (2007)........................................................................................ *passim*

*Chang v. JPMorgan Chase Bank, N.A.,*
  845 F.3d 1087 (11th Cir. 2017) ............................................................................8, 9

*Cofacredcit, S.A. v. Windsor Plumbing Supply Co.,*
  187 F.3d 229 (2d Cir. 1999).....................................................................................17

*Comcast of South Florida, II Inc. v. Best Cable Supply, Inc.,*
  No. 07-22335-CIV, 2008 WL 190584 (S.D. Fla. Jan. 22, 2008)..............................13

*De Falco v. Bernas,*
  244 F.3d 286 (1st Cir. 2001).....................................................................................12

*Douglas Asphalt Co. v. QORE, Inc.,*
  657 F.3d 1146 (11th Cir. 2011) ................................................................................19

*Efron v. Embassy Suites (P.R.), Inc.,*
  223 F.3d 12 (1st Cir. 2000).......................................................................................17

*Emess Capital, LLC v. Rothstein,*
No. 10-60882-CIV, 2011 WL 13214302 (S.D. Fla. Mar. 9, 2011) ................................ *passim*

*H.J. Inc. v. Northwestern Bell Tel. Co.,*
492 U.S. 229 (1989)..........................................................................................................17

*Handeen v. Lemaire,*
112 F.3d 1339 (8th Cir. 1997) ..........................................................................................14

*Heise v. Porcelli,*
No. 8:07-CV-1866-T-24MAP, 2008 WL 2439884 (M.D. Fla. June 13, 2008)....................13

*Hemi Group, LLC v. City of New York,*
559 U.S. 1 (2010) .............................................................................................................18

*Holmes v. Sec. Investor Prot. Corp.,*
503 U.S. 258 (1992)..........................................................................................................18

*Home v. Potter,*
392 F. App'x 800 (11th Cir. 2010) ......................................................................................4

*In re Managed Care Litig.,*
298 F. Supp. 2d 1259 (S.D. Fla. 2003) ..............................................................................13

*Jackson v. BellSouth Telecomms,*
372 F.3d 1250 (11th Cir. 2004) ..................................................................12, 13, 16, 17

*Lawrence v. Bank of Am.,*
455 F. App'x 904 (11th Cir. 2012) ..............................................................................6, 7, 8

*Millette v. DEK Technologies, Inc.,*
No. 08-60639-CV, 2008 WL 5054741 (S.D. Fla. Nov. 25, 2008) ...................................13, 14

*Mizzaro v. Home Depot, Inc.,*
544 F.3d 1230 (11th Cir. 2008) ..........................................................................................6

*Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards,*
437 F.3d 1145 (11th Cir. 2006) ..................................................................................13, 15

*Pelletier v. Zweifel,*
921 F.2d 1465 (11th Cir. 1991) ........................................................................................15

*Perlman v. Wells Fargo Bank, N.A.,*
559 F. App'x 988 (11th Cir. 2014) ......................................................................................7

*Platinum Estates, Inc. v. TD Bank, N.A.,*
No. 11-60670-CIV, 2012 WL 760791 (S.D. Fla. Mar. 8, 2012) ..........................................7

*Ray v. Spirit Airlines, Inc.,*
 836 F.3d 1340 (11th Cir. 2016) ...................................................................................18

*Remeus v. Waste Management Inc. of Florida,*
 No. 14-80158-CIV, 2014 WL 1328392 (S.D. Fla. Mar. 31, 2014) ...........................................4

*Reves v. Ernst & Young,*
 507 U.S. 170 (1993) .................................................................................................15

*RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.,*
 579 F. App'x 779 (11th Cir. 2014) ................................................................................10

*Rogers v. Nacchio,*
 241 F. App'x 602 (11th Cir. 2007) ................................................................................15

*SIG, Inc. v. AT&T Digital Life, Inc.,*
 971 F. Supp. 2d 1178 (S.D. Fla. 2013) ............................................................................4

*Simpson v. Sanderson Farms, Inc.,*
 744 F.3d 702 (11th Cir. 2014) ..............................................................................12, 18

*SPV OSUS Ltd. v. UBS AG,*
 882 F.3d 333 (2d Cir. 2018) ........................................................................................9

*Super Vision Int'l, Inc. v. Mega Int'l Comm'l Bank, Co., Ltd.,*
 534 F. Supp. 2d 1326 (S.D. Fla. 2008) .....................................................................13, 15

*United States v. Church,*
 955 F.2d 688 (11th Cir. 1992) ......................................................................................14

*United States Starrett,*
 55 F.3d 1525 (11th Cir. 1995) ......................................................................................15

*United States v. Turkette,*
 452 U.S. 576 (1981) .................................................................................................14

**Rules**

18 U.S.C. § 1961(1) ...................................................................................................15

Fed. R. Civ. P. 9(b) ...........................................................................................6, 13, 14

Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), pursuant to Federal Rule of Civil Procedure 12(b)(6), moves this Court for an Order dismissing the Complaint brought by plaintiff Brad Tuckman ("Tuckman") in its entirety.

## INTRODUCTION

Tuckman, the alleged victim of a widely-known film financing investment fraud, seeks to hold Wells Fargo responsible for his losses, notwithstanding that *according to his own allegations*, he did not directly communicate with Wells Fargo regarding his investment, he had no banking relationship with Wells Fargo, and he did not rely upon or discuss his investment with Wells Fargo. Rather, Tuckman's losses arise entirely from his dealings with non-parties Benjamin McConley ("McConley"), Jason Van Eman ("Van Eman"), and their respective companies (collectively, the "Fraudsters"). Despite Wells Fargo's complete disconnect from Tuckman, the Complaint seeks to link Wells Fargo's old banking relationship with the Fraudsters, which ended more than two years before Tuckman's failed investment, with Tuckman's current losses. That effort, however, fails as a matter of law because the Complaint does not plausibly allege claims against Wells Fargo, and it must therefore be dismissed.

As an initial—and likely dispositive—matter, Wells Fargo publically disclosed the Fraudsters' conduct and decisively divorced itself from the Fraudsters when it sued them for the very issues Tuckman alleges here in 2016—a year before Tuckman had any interactions with the Fraudsters. In that case, *Wells Fargo Bank v. Forrest Capital Partners, Inc.*, No. 1:16-cv-25266-CMA (S.D. Fla., complaint filed Dec. 2016) (the "Wells Affirmative Lawsuit"), Wells Fargo accused the Fraudsters of making false representations regarding a film financing scheme and using Wells Fargo bank accounts to perpetrate that scheme. A year later, Tuckman alleges he fell for the same scheme, this time with the Fraudsters using accounts at a different bank. Yet,

notwithstanding the Wells Affirmative Lawsuit announcing (and denouncing) the Fraudsters' scheme, Tuckman now seeks to hold Wells Fargo liable for that very conduct.  Simply stated, Wells Fargo's lawsuit informed the world of the Fraudsters' conduct.  Tuckman failed to take heed of that warning.  Tuckman cannot now seek to hold Wells Fargo liable for fraudulent conduct that Wells Fargo affirmatively disclosed publicly prior to Tuckman's involvement.

The Wells Affirmative Lawsuit, standing alone, precludes Tuckman's claims against Wells Fargo.  But Tuckman's specific causes of action also fail as a matter of law.  First, to adequately allege a claim and abetting fraud, a plaintiff must allege with particularity that a bank not only had "actual knowledge" of the underlying fraudulent scheme, but offered "substantial assistance" in advancing the commission of that scheme.  Here, the Complaint is devoid of any allegations that Wells Fargo had knowledge that *Tuckman* was investing with the Fraudsters.  Further, given that Wells Fargo publicly divorced itself from any relationship with the Fraudsters years before Tuckman interacted with the Fraudsters, the Complaint fails to (and cannot) allege that Wells Fargo provided substantial assistance in connection with Tuckman's alleged losses.

Second, Tuckman's claim for civil conspiracy to defraud suffers from similar deficiencies.  Because Wells Fargo had no involvement in the fraud against him, Tuckman is unable to demonstrate any agreement on the part of Wells Fargo to participate in the conspiracy, any overt act committed by Wells Fargo, or scienter.  Tuckman instead relies exclusively on conclusory allegations to substantiate his claim, all of which are insufficient as a matter of law.

Finally, Tuckman's civil RICO claim under Section 1962(c) likewise fails because of the Complaint's conclusory pleadings and failure to allege the elements necessary to pursue a RICO claim.  Specifically, Tuckman fails to allege any predicate acts on the part of Wells Fargo, that Wells Fargo engaged in an enterprise, or that Wells Fargo was the direct cause of Tuckman's harm.

Indeed, other than generalized allegations regarding Wells Fargo unrelated to Tuckman, Tuckman fails to allege *anything* about Wells Fargo in support of his RICO claim.  And because Tuckman fails to establish the underlying substantive RICO claim, his claim for civil RICO conspiracy under Section 1962(d) also fails.

In short, Tuckman and his advisors had access to voluminous information about the Fraudsters' scheme, including from Wells Fargo, but he chose to risk his money anyway.  Wells Fargo had no involvement whatsoever in the fraud perpetrated against Tuckman.  Wells Fargo thus cannot be held liable for Tuckman's decision to do business with the Fraudsters long after Wells Fargo (and others) disclosed the fraud to the general public.

## STATEMENT OF FACTS

Tuckman alleges that non-parties Benjamin McConley and Jason Van Eman were the "masterminds" of a matched-funds film-financing Ponzi scheme.  Compl. ¶¶ 1, 5-6.  According to Tuckman, McConley and Van Eman promised investors that they would provide funds to match a cash contribution from the investors and use the combined funds to secure film financing.  Compl. ¶ 23.  The Fraudsters promised investors that the combined funds would be used to secure a line of credit from a bank, and the investors' contributions would be returned once the line of credit was secured.  Compl. ¶ 24.  In reality, investor contributions were transferred to the Fraudsters' personal accounts.  Compl. ¶ 27.

As the Complaint concedes, Tuckman himself had no involvement in the scheme until July 21, 2017, when he began "seeking someone to help finance a movie."  Compl. ¶ 100.  Prior to Tuckman's involvement, though, alleged victims of the Fraudsters initiated numerous public lawsuits.  Compl. ¶¶ 34-86.  The Complaint describes circumstances giving rise to four of these lawsuits:

- *Dane A. Miller v. Benjamin McConley, et al*. (S.D. Fla., complaint filed Oct. 2014) (alleging the Fraudsters defrauded investor of $1 million);

- *Adana Investing, Inc. v. Forrest Capital Partners, Inc., et al*., No. 15-cv-24038-MGC (S.D. Fla., complaint filed Oct. 2015; amended complaint filed Nov. 2015) (alleging the Fraudsters defrauded investor of $28.5 million);

- *SSC North America, LLC v. Forrest Capital Partners, et al*. (Fla., Miami-Dade County, complaint filed Oct. 2016) (a lawsuit **brought by Tuckman's present counsel** alleging the Fraudsters defrauded investors of $6 million);

- *818 Media Productions, LLC v. Weathervane Productions, et al.* (C.D. Cal., complaint filed Nov. 2016) (alleging the Fraudsters defrauded investor of $1.25 million).

*See* Compl. ¶¶ 34-72.  All of these lawsuits were initiated prior to Tuckman's involvement with the Fraudsters.

On December 20, 2016, Wells Fargo also filed a public lawsuit disclosing the Fraudsters' conduct.  In that lawsuit, Wells Fargo publicly announced the Ponzi scheme and made clear that it had disclaimed any involvement with the scheme, had no knowledge of the scheme, and was itself injured by the scheme.  *See Wells Fargo Bank v. Forrest Capital Partners, Inc.*, No. 1:16-cv-25266-CMA (S.D. Fla., complaint filed Dec. 2016).[1]

Tuckman's first contact with the Fraudsters occurred on July 21, 2017, *after* the four investor lawsuits described above were filed, and *a year* after Wells Fargo publicly divorced itself from the Fraudsters.  The Complaint alleges that in November 2017, Tuckman, McConley, and Van Eman executed a Depositor Funding Agreement ("Funding Agreement").[2]  Compl. ¶¶ 105-

---

[1] "Courts may take judicial notice of pleadings from another lawsuit without converting a motion to dismiss into a motion for summary judgment."  *See Remeus v. Waste Management Inc. of Florida*, No. 14-80158-Civ., 2014 WL 1328392, at *2 (S.D. Fla. Mar. 31, 2014) (citing *Home v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010)).  A true and correct copy of the Wells Affirmative Lawsuit, exclusive of exhibits, is attached as Exhibit A.

[2] The Agreement is attached as Exhibit B.  Courts can consider a document attached to a Rule 12(b)(6) motion to dismiss where the document is "referenced by the plaintiff in its complaint," is "central to the plaintiff's claim," and "[the document's] contents [are] not in dispute."  *SIG, Inc.*

124; Exhibit B at 11, 13. Under the Agreement, Tuckman agreed to deposit $1.85 million into an account held by McConley and Van Eman at JPMorgan Chase Bank ("Chase"), after which the Fraudsters would deposit their own $1.85 million in matching funds, with the aim of using the combined $3.7 million to secure financing for a film. Compl. ¶¶ 105-124. Tuckman would then have his $1.85 million returned. Compl. ¶ 110. Tuckman alleges that he deposited his contribution based on certain representations made by a Chase employee, Compl. ¶¶ 114-24, but the Complaint does not allege that Wells Fargo was involved in Tuckman's transaction.

## ARGUMENT

### I.   Tuckman's Allegations Must and Do Not Pass a Heightened Pleading Standard.

A complaint must be dismissed if it does not "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to be facially plausible, a plaintiff must plead "*factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis added) (citing *Twombly*, 550 U.S. at 556). Mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* Thus, the relevant question is not whether Tuckman could invent facts that state a claim for relief, but whether sufficient facts *have been pled* in the first instance to support the legal claims asserted. *Iqbal*, 556 U.S. at 678-79 (noting that "a complaint [does not] suffice if it tenders 'naked assertions' devoid of 'further factual enhancement,'" and a complaint must be dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.").

---

*v. AT&T Digital Life, Inc.*, 971 F. Supp. 2d 1178, 1188 (S.D. Fla. 2013). Exhibit B meets all of these requirements.

Fraud allegations—like those asserted here—are subject to the heightened pleading requirements of Rule 9(b).  That rule provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  *See* Fed. R. Civ. P. 9(b) (noting scienter may be alleged generally).  In short, "under Rule 9(b), a plaintiff must plead 'the who, what, when, where, and how of the allegedly false statements.'"  *Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*, No. 10-22153-CIV, 2011 WL 4434891, at *2 (S.D. Fla. Sept. 23, 2011) (quoting *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008)).  The same is true for a claim for aiding and abetting fraud.  *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066-67 (11th Cir. 2007).

Once the Complaint's conclusory assertions are set aside, the deficiencies in Tuckman's claims against Wells Fargo are unavoidable.  Wells Fargo had no role whatsoever in the fraud against Tuckman.  Accordingly, none of Tuckman's claims against Wells Fargo meet the heightened pleading standards required by *Iqbal*, *Twombly*, and Rule 9(b).

## II.  Count VI Must Be Dismissed Because Wells Fargo Did Not Know About or Substantially Assist the Fraud Against Tuckman.

Tuckman alleges in Count VI that Wells Fargo aided and abetted the fraud perpetrated against him by the Fraudsters.  *See* Compl. ¶¶ 190-95.  To state an aiding and abetting claim under Florida law, a plaintiff must allege (1) an underlying violation on the part of the primary wrongdoer; (2) actual knowledge of the underlying violation by the alleged aider and abettor; and (3) the rendering of substantial assistance in committing the wrongdoing.  *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 906 (11th Cir. 2012).  The Complaint fails to state an aiding and abetting claim against Wells Fargo because it fails to allege facts that could establish the second and third elements.

**A.**     **The Complaint fails to plead facts sufficient to show that Wells Fargo had actual knowledge of the fraud against Tuckman.**

"[W]hen a claim of aiding and abetting is asserted against a bank, the second element—knowledge—will only be satisfied if the plaintiff pleads facts demonstrating that the bank had 'actual knowledge' of the wrongdoings." *Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 993 (11th Cir. 2014) (citing *Lawrence*, 455 F. App'x at 907).  Here, the Complaint does not allege generally, let alone with specificity, that Wells Fargo had actual knowledge of the fraud against Tuckman.  Wells Fargo is not alleged to have known about the Funding Agreement between Tuckman and the Fraudsters, the ensuing transactions at Chase, or any of the communications between Tuckman, the Fraudsters and Chase.

Rather, the Complaint alleges at length that Wells Fargo had knowledge of the Ponzi scheme *in general*.  *See, e.g.*, Compl. ¶¶ 20-21, 34-86.  But none of these allegations involve Tuckman and they all predate Tuckman.  In fact, by the time Tuckman connected with the Fraudsters, Wells Fargo had (a) ended its banking relationship with the Fraudsters two years prior, and (b) filed suit against the Fraudsters clearly describing the Ponzi scheme one year prior, putting its knowledge of the scheme into the public domain.  *See* Ex. A.  If anything, Wells Fargo's public disclosure of its knowledge of the scheme should have dissuaded Tuckman from taking his own chances with the Fraudsters.  That Tuckman failed to heed this and many other warnings is his responsibility, not Wells Fargo's.[3]  As a result, Tuckman's allegations are insufficient under Florida law to plead that Wells Fargo had actual knowledge.

---

[3] Even if Tuckman were to allege that, because Wells Fargo had prior knowledge of the Ponzi scheme, it *could* or *should* have known of the fraud against him, this would be insufficient to state an aiding and abetting claim under well-established Florida law.  *See Lawrence*, 455 F. App'x at 907; *see also Platinum Estates, Inc. v. TD Bank, N.A.*, No. 11-60670-CIV, 2012 WL 760791, at *3 (S.D. Fla. Mar. 8, 2012) (requiring actual knowledge, not merely that a defendant "should have known that something was amiss.").  Nor is it relevant, as Tuckman alleges, that, years before

**B.     The Complaint fails to allege that Wells Fargo substantially assisted the fraud against Tuckman.**

In addition to falling short on the actual knowledge element, Tuckman also fails to allege that Wells Fargo substantially assisted the fraud against him.  A defendant provides "substantial assistance" when it "affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur."  *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1098 (11th Cir. 2017).

The Complaint's sole allegation linking Wells Fargo and Tuckman is that "Tuckman's agents . . . had interactions with Wells Fargo agents, who never informed him that McConley and Van Eman were fraudsters."  Compl. ¶ 107.  First, this vague allegation is grossly deficient under *Iqbal* and *Twombly*.  What Tuckman agent?  What Wells Fargo agent?  What was said?  When?  What was the nature of the alleged agency?  This is precisely the type of vague, conclusory pleading that *Iqbal* and *Twombly* forbids.

Second, the Complaint does not allege that Wells Fargo's alleged "agents" had any legal obligation to inform Tuckman's "agents" about anything.[4]  Nor does the Complaint even allege that Tuckman's "agents" informed Wells Fargo's "agents" that Tuckman was doing business with the Fraudsters.  It is utterly implausible to draw any inferences that Wells Fargo substantially

---

Tuckman came along, Wells Fargo allegedly identified and overrode "several red flags" when it opened bank accounts on behalf of McConley and Van Eman.  Allegations of atypical banking transactions and disregarding of red flags are insufficient to plead the actual knowledge element of aiding and abetting against banks.  *Lawrence*, 455 F. App'x at 907.

[4] Tuckman's present counsel had sufficient knowledge of the Ponzi scheme in 2016 to draft a detailed complaint against the Fraudsters on behalf of SSC North America, and yet apparently did nothing to warn Tuckman of the fraud.  If Wells Fargo's general knowledge of the fraud created a legal obligation to affirmatively warn unknown future investors such as Tuckman, then surely Tuckman's counsel had the same obligation.  And if that obligation is sufficient to meet the "substantial assistance" element of an aiding and abetting claim in Florida, then perhaps Tuckman's counsel faces the same legal liability that they now attempt to assign to Wells Fargo.

assisted the fraud against Tuckman from this single, deficient allegation.  *Chang,* 845 F. 3d at 1098 ("[mere] inaction 'constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff.'").[5]

Tuckman's remaining attempt to link Wells Fargo with the fraud against him is even more tenuous, and falls far short of establish an aiding and abetting claim against Wells Fargo.  Tuckman alleges that had Wells Fargo not participated in deceiving prior victims, the Fraudsters would not have had funds with which to defraud Tuckman, and Tuckman would not have been misled by prior investors who had unknowingly also been defrauded.  *See* Compl. ¶¶ 89-91, 104.  Basically, Tuckman is alleging that Wells Fargo's prior banking relationship with the Fraudsters, which ended years before Tuckman's involvement with the Fraudsters and which was fully disclosed by Wells Fargo in its own public lawsuit against the Fraudsters, somehow allowed the scheme to continue until, nearly a year later, it eventually ensnared Tuckman.  Needless to say, these allegations cannot support a plausible inference that Wells Fargo substantially assisted *in the fraud against Tuckman*.  Even if Wells Fargo had some connection to the frauds perpetrated against prior victims within the same Ponzi scheme (which Wells Fargo denies), that connection would not "substantially advance" a later fraud against unrelated victims.  The causal chain is far too attenuated.

*SPV OSUS Ltd. v. UBS AG*, 882 F.3d 333, 345-46 (2d Cir. 2018) illustrates this point.  The plaintiffs in *SPV OSUS* sought to hold certain feeder funds liable in the Madoff Ponzi scheme because those feeder funds provided assistance through the collection of money from investors which, in turn, allowed Madoff to pay off earlier investors and allowed the scheme to continue to

---

[5] Nothing in the Complaint suggests that Wells Fargo owed a fiduciary duty to Tuckman, nor would any such allegation be credible.

operate rather than collapsing sooner.  882 F.3d at 345.  The court first affirmed that "[s]ubstantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur."  *Id*.  The court then distinguished between (a) allegations of attenuated "but for" causation, which is all the complaint contained, and (b) allegations that the injuries suffered by the victim were directly caused by or reasonably foreseeable to the alleged aider and abettor.  The court concluded that the link between the defendants' actions (or inactions) and the harm suffered by the plaintiff was "simply too attenuated to constitute proximate cause."  *Id.* at 346.  The same is true here.  Long before Tuckman elected to invest with the Fraudsters, Wells Fargo ended its prior connection with the Fraudsters and sued them publicly, denouncing their scheme for all the world to see.  Even if the Fraudsters eventually used funds that had once been in Wells Fargo accounts to open new accounts with a different bank as alleged here, that allegation is insufficient to support that Wells Fargo substantially assisted a later fraud against a victim completely unknown to Wells Fargo.  This is precisely the type of attenuated "but for" allegation that *SPV OSUS* rejected.

Accordingly, the Complaint fails to state a claim against Wells Fargo for aiding and abetting the fraud against Tuckman.

## III.   Count IV Must Be Dismissed Because the Complaint Fails to State a Claim Against Wells Fargo for Civil Conspiracy to Defraud.

Count IV of the Complaint asserts a claim against Wells Fargo for civil conspiracy to commit fraud.  Compl. ¶¶ 175-79.  To establish a claim of civil conspiracy, a plaintiff must allege (1) an agreement between two or more parties, (2) to do an unlawful act, (3) an overt act in furtherance of the conspiracy, and (4) damage to the plaintiff as a result of the act performed in furtherance of it.  *RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 F. App'x 779, 789 (11th Cir. 2014).

The Complaint fails to allege facts sufficient to establish the first three elements with respect to Wells Fargo.   The Complaint instead asserts the very sort of formulaic recitations prohibited by the Supreme Court.   *See Twombly*. 550 U.S. at 558.   The only allegation that Wells Fargo agreed to do an unlawful act appears in Paragraph 177 of the Complaint.   *See* Compl. ¶ 177 ("Wells Fargo, JPMorgan, and Torres agreed to conspire and conspired with McConley and Van Eman to commit fraud, including wire fraud.").   But Paragraph 177 is devoid of factual detail and is entirely conclusory, and thus should be ignored.   The same is true with respect to the requirement to show an overt act.   Paragraph 178 contains the only potentially relevant allegation, and it is also completely conclusory.   *See* Compl. ¶ 178 ("Wells Fargo, JPMorgan, and Torres committed overt acts to further that conspiracy.").   Simply put, the Complaint does nothing more than recite the elements of a civil conspiracy claim.   This is precisely the type of pleading *Iqbal* and *Twombly* intended to prevent and is dispositive of the claim.

Moreover, "[u]nder Florida law, the causes of action of fraud and civil conspiracy both require scienter."   *Banco Latino Intern. v. Gomez Lopez*, 95 F. Supp. 2d 1327, 1336 (S.D. Fla. 2000).   The Complaint does not—and cannot—plead scienter with respect to Wells Fargo.   None of Wells Fargo's alleged actions—all of which took place *prior to* Tuckman's involvement in the Ponzi scheme—were intended to defraud Tuckman specifically.   And Wells Fargo's filing of a lawsuit against the Fraudsters long before Tuckman's alleged losses belies any suggestion that Wells Fargo intended to conspire against Tuckman.

Finally, it is not enough, as Tuckman alleges, that Wells Fargo and the other defendants were allegedly involved in the same Ponzi scheme.   To prove conspiracy, the conspirators must have acted together.   *See Alhassid v. Bank of America, N.A.*, 60 F. Supp. 3d 1302, 1319 (S.D. Fla. 2014) ("'An allegation of parallel conduct and a bare assertion of conspiracy will not suffice.

Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." (*quoting Twombly*, 550 U.S. at 556-57)).   Nowhere does the Complaint allege that Wells Fargo acted in concert with the other defendants.

Accordingly, even accepting Tuckman's non-conclusory allegations as true, the Complaint fails to state a claim against Wells Fargo for civil conspiracy to defraud.

## IV.     Count I Must Be Dismissed Because the Complaint Fails to State a Claim Against Wells Fargo Under 18 U.S.C. § 1962(c).

In order to establish a federal civil RICO violation under § 1962(c), a plaintiff must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290-91 (11th Cir. 2010).  Moreover, because the language of § 1962(c) provides for liability for a *person* engaged in a RICO enterprise, not the enterprise itself, the elements of a cause of action under § 1962(c) must be alleged as to each individual defendant.  *Emess Capital, LLC v. Rothstein*, No. 10-60882-CIV, 2011 WL 13214302, at *8 (S.D. Fla. Mar. 9, 2011) (citing *De Falco v. Bernas*, 244 F.3d 286, 306 (1st Cir. 2001)).

Further, to prove a RICO violation under federal law, a plaintiff must establish, among other things, "continuity."  *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004) (in addition to showing two or more related predicate acts, federal RICO plaintiffs must show "the predicate acts demonstrate[] criminal conduct of a continuing nature").  Lastly, a plaintiff must further allege that the defendant's racketeering activity *proximately caused* an injury to business or property.  *See Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 705 (11th Cir. 2014).

**A.      The Complaint fails to plead that Wells Fargo engaged in an illegal enterprise or that Wells Fargo directed the affairs of the alleged enterprise.**

To state a RICO claim against Wells Fargo, Tuckman must allege both the existence of a RICO enterprise and that Wells Fargo participated in the operation or management of that enterprise. *Jackson*, 372 F.3d at 1264. Tuckman must include "factual allegations as to *how* [each] individual Defendant[] played a part in directing the affairs of the enterprise." *Comcast of South Florida, II Inc. v. Best Cable Supply, Inc.*, No. 07-22335-CIV, 2008 WL 190584, at *8 (S.D. Fla. Jan. 22, 2008); *accord Heise v. Porcelli*, No. 8:07-CV-1866-T-24MAP, 2008 WL 2439884, at *4 (M.D. Fla. June 13, 2008). This requires Tuckman to allege detailed facts which demonstrate "affirmative and deliberate participation" by Wells Fargo in "the conduct of the affairs of the enterprise" by "knowingly implement[ing] and ma[king] decisions" regarding the alleged "pattern of racketeering activity." *Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1156 (11th Cir. 2006) (internal quotations and citation omitted); *Super Vision Int'l, Inc. v. Mega Int'l Comm'l Bank, Co., Ltd.*, 534 F. Supp. 2d 1326, 1338 (S.D. Fla. 2008). Tuckman makes no such allegations against Wells Fargo in the Complaint, and his RICO claims thus fail as a matter of law.

Tuckman's sole allegation regarding an enterprise is Paragraph 154, which alleges that defendants "associated in fact to create an enterprise with the common purpose of defrauding dozens of victims from 2012 to 2019." Compl. ¶ 154. Courts consistently reject such conclusory allegations for failing to meet the heightened pleading standards mandated by Rule 9(b), *Iqbal*, and *Twombly*. A "RICO enterprise cannot be a group simply conspiring to commit a fraud." *Millette v. DEK Technologies, Inc.*, No. 08-60639-CV, 2008 WL 5054741, at *4 (S.D. Fla. Nov. 25, 2008) (*citing In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1274 (S.D. Fla. 2003)). Rather, "[t]he parties must be organized in a fashion that would enable them to function as a racketeering

13

organization for other purposes." *Millette*, 2008 WL 5054741, at *4 (citation omitted). As the Supreme Court held in *United States v. Turkette*, 452 U.S. 576 (1981), a RICO enterprise must be an ongoing organization, formal or informal, functioning as a continuing unit. 452 U.S. at 583. The enterprise cannot be merely the racketeering activity at issue; it must exist separate and apart from the pattern of activity in which it engages. *Id*; *see also United States v. Church*, 955 F.2d 688, 699 (11th Cir. 1992).

Applying these principles to the Complaint, Tuckman fails to plead any facts that would suggest Wells Fargo acted as part of a racketeering enterprise. Rather, Tuckman merely parrots the statutory term "association in fact" without alleging any facts that would establish such a thing. The Complaint contains not a single allegation from which a plausible inference could be drawn that Wells Fargo and the Fraudsters operated as a continuing unit apart from the alleged predicate acts. Tuckman makes no effort to distinguish the alleged enterprise from the predicate acts in which Plaintiff (deficiently) alleges Wells Fargo engaged. *See Handeen v. Lemaire*, 112 F.3d 1339, 1352 (8th Cir. 1997) (considering whether the alleged enterprise would still exist where the predicate acts were removed from the equation). Tuckman does not allege, for example, that Wells Fargo communicated with Chase or Torres, let alone that they acted as a continuing unit. Nor does he allege that Wells Fargo continued to engage with the Fraudsters after May 2015, which is more than two years before Tuckman began communicating with the Fraudsters himself. Compl. ¶ 100. Accordingly, the Complaint's single, conclusory enterprise allegation (Compl. ¶ 154) fails to meet the pleading standards required by Rule 9(b), *Iqbal*, and *Twombly*.

Tuckman also fails to allege *any* fact, specific or otherwise, that would suggest Wells Fargo had a part in *directing* the alleged enterprise. RICO requires a plaintiff to plead facts demonstrating that the defendant had some part in directing the enterprise's affairs, not just its own affairs, and

exercised an element of control over those affairs. *Emess Capital*, 2011 WL 13214302, at *6; *Super Vision*, 534 F. Supp. 2d at 1338; *see also Edwards*, 437 F.3d at 1156 (RICO defendant must "knowingly implement[]' and 'mak[e] decisions'") (*citing United States Starrett*, 55 F.3d 1525, 1548 (11th Cir. 1995) and *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)).

*Super Vision* illustrates this point. There, the plaintiff alleged that a bank engaged in a RICO enterprise by enabling a judgment debtor to defraud the creditor. The court granted the bank's motion to dismiss, *even though the plaintiff alleged that the bank was aware of the fraud*, because the "operation or control" test was not satisfied. The plaintiff could not state a viable claim where the bank "did not control any aspect of the alleged enterprise . . . [or] control the funds [transferred by the judgment debtor]." 534 F. Supp. 2d at 1338; *see also Emess Capital*, 2011 WL 13214302, at *6 (dismissing RICO claims for failure to allege an enterprise). The same result follows here. Tuckman's failure to allege an enterprise, let alone that Wells Fargo controlled or operated the enterprise, requires that his RICO claim be dismissed.

**B.      The Complaint fails to allege any predicate acts by Wells Fargo sufficient to create a "pattern of racketeering activity."**

"Racketeering activity" means the commission of one or more predicate acts as set forth in the RICO statutes. *Id.*; 18 U.S.C. § 1961(1). To establish a "pattern" of such activity, "a plaintiff must allege facts sufficient to support each of the statutory elements for at least two of the pleaded predicate acts." *Rogers v. Nacchio*, 241 F. App'x 602, 607 (11th Cir. 2007). Wire fraud, an enumerated predicate act, "occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the . . . wires in furtherance of that scheme.'" *American Dental*, 605 F.3d at 1290 (quoting *Pelletier v. Zweifel*, 921 F.2d 1465, 1498 (11th Cir. 1991)).

Further, where a Section 1962(c) claim rests entirely on the predicate act of wire fraud, a plaintiff must satisfy certain pleading criteria specifically required by Rule 9(b). The plaintiff must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Id.* at 1291. And those allegations must be attributed to each individual defendant, not generally plead. *Emess Capital, LLC*, 2011 WL 13214302, at *3-4.

The Complaint here falls far short of these pleading requirements. Tuckman alleges that "Wells Fargo . . . participated through a pattern of racketeering activity, namely, numerous instances of wire fraud under 18 U.S.C. § 1343." *See* Compl. ¶ 158. But Tuckman makes no effort to identify those instances of wire fraud or when they occurred. Nothing in the Complaint provides the factual detail of Wells Fargo's alleged wire fraud that is required by Rule 9(b). Most fundamentally, Tuckman never alleges that Wells Fargo communicated with Tuckman (or his agents) *by use of the wires*. Nor does Tuckman's singular, vague allegation that his agents "interacted" with Wells Fargo's alleged agents identify the time, nature, and content of those alleged "interactions" or the identity of the alleged participants. Tuckman thus fails to adequately allege *any* instance of wire fraud, much less a pattern of predicate acts.

Even if Tuckman could overcome the current pleading deficiencies (which he cannot), to allege a pattern of racketeering activity, the predicate acts must be related and either amount to or pose a threat of continuing criminal activity. *Jackson*, 372 F.3d at 1264-65. The continuity requirement is satisfied by showing a "closed-ended" pattern—a series of related predicate acts

extending over a substantial period of time. *Jackson*, 372 F.3d at 1265 (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241-42 (1989)).[6]

Here, no such close-ended pattern of predicate acts exists as to Wells Fargo. First, as set forth above, it is entirely unclear what predicate acts Wells Fargo is alleged to have committed. Strictly from a timing perspective, the first allegation in the Complaint relating to Wells Fargo concerns a deposit by a different investor into a Wells Fargo account in June 2014. Compl. ¶ 34. The last allegation in the Complaint concerning any activity by Wells Fargo took place in June 2015. Compl. ¶¶ 73-80.[7] Thus, at the very most, Wells Fargo is alleged to have engaged in predicate acts spanning less than a year. Courts have universally rejected arguments that a year of activity is sufficient to meet RICO's continuity requirements. *See Emess Capital*, 2011 WL 13214302, at *6-7 (observing, after a thorough review, that *no* federal court of appeals has ever found that a series of predicate acts committed during a period of less than one year satisfies the continuity requirement); *see also Jackson*, 372 F.3d at 1266 (activity spanning nine months is insufficient to show continuity).[8]

---

[6] Courts also allow for allegations of an "open-ended" pattern of racketeering activity posing a threat of continuing criminal conduct beyond the period when the predicate acts were performed. *Id.* Here, Tuckman fails to articulate which pattern he is pursuing. However, given that there are no allegations related to continuing predicate acts on the part of Wells Fargo, it stands to reason that Tuckman is pursuing a "closed-ended" pattern. Further supporting this presumption is the fact that the Fraudsters were indicted in July 2019, thereby ending any threat of continuing criminal conduct. Compl. ¶ 19.

[7] The Complaint alleges that in October 2015, Van Eman sent a letter to a different investor that purported to be signed by former Wells Fargo employee Benjamin Rafael. Given that Wells Fargo is not alleged to have sent the letter, this cannot constitute a predicate act. Further, Tuckman concedes that Rafael was not a Wells Fargo employee on the date the letter was sent since his employment ended on June 18, 2015. Compl. ¶ 21. Finally, that letter is the subject of the Wells Affirmative Lawsuit. Ex. A at ¶ 31(f).

[8] Other circuits follow the same requirements. *See, e.g.*, *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 19 (1st Cir. 2000) (finding no closed-ended continuity where predicate acts occurred over 21-month period); *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir.

**C.      The Complaint fails to allege that Wells Fargo proximately caused Tuckman's injuries.**

Tuckman makes no effort whatsoever to allege that he suffered an injury plausibly traceable to Wells Fargo.  This is fatal to his RICO claim, as he must be able to show that Wells Fargo's alleged racketeering activity *proximately caused* his alleged injury.  *See Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 705 (11th Cir. 2014).  A plaintiff's allegations must show a "direct relation" between the injury and the purported RICO violations.  *Id.* at 712.  "But for" causation is not sufficient.  *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992).

Tuckman cannot pin his alleged injury—his inability to recover the $1.85 million that he invested with the Fraudsters—on Wells Fargo.  *See* Compl. ¶¶ 87-152.  Instead, Tuckman accounts for his injury by claiming that had Wells Fargo not participated in deceiving prior victims of the Ponzi scheme, the Fraudsters would not have had funds with which to defraud Tuckman, and Tuckman would not have been misled by prior investors who had unknowingly also been defrauded.  *See* Compl. ¶¶ 89-91, 104.  But a plaintiff cannot prove proximate causation through a daisy chain of events that had *nothing to do with the injured party*.

Indeed, "the central question" of RICO-based proximate cause is "whether the alleged violation led *directly* to the plaintiff's injuries."  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (emphasis added); *see also Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1349 (11th Cir. 2016) ("Notably, the fact that an injury is reasonably foreseeable is not sufficient to establish proximate cause in a RICO action—the injury must be direct.") (citing *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 12 (2010)).  Here, the Complaint contains no allegations that Wells Fargo contributed *directly* to Tuckman's injuries.

---

1999) (stating that the Second Circuit "has never held a period of less than two years to constitute a 'substantial period of time.'").

Moreover, by filing the Wells Affirmative Lawsuit in 2016 and publicly outing the Fraudsters long before Tuckman's first contact with them, Wells Fargo decisively severed any connection between Wells Fargo's prior banking relationship with the Fraudsters and Tuckman's injury.   Wells Fargo had no way of knowing Tuckman was considering investing with the Fraudsters in 2017.   Wells Fargo had done what it could to put the Ponzi scheme in the public record.   Wells Fargo did not cause Tuckman's loss.

**V.      Count II Must be Dismissed Because the Complaint Fails to State a Claim Against Wells Fargo for Civil RICO Conspiracy Under 18 U.S.C. § 1962(d).**

Tuckman's conspiracy claim under 18 U.S.C. § 1962(d) fails for the same reasons that his substantive RICO claim fails.   To prove a RICO conspiracy, a plaintiff must show that: (a) the defendant agreed to the overall objective of the conspiracy, or (b) the defendant agreed to commit two predicate acts.   *American Dental*, 605 F.3d at 1293.   But a plaintiff has no standing to bring a civil RICO conspiracy claim unless his injuries resulted from a violation of a substantive provision of RICO.   *Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146, 1153 (11th Cir. 2011) (concluding that plaintiff could not prevail on conspiracy claim because plaintiff could not state a claim under section 1962(c)).   Because the Complaint fails to plead essential elements of a substantive RICO claim against Wells Fargo, the conspiracy claim must also fail.

The RICO conspiracy claim also fails for the independent reason that the Complaint does not plead the essential elements of the conspiracy claim itself.   The Complaint never once provides factual detail with respect to any agreement on Wells Fargo's part to conspire against Tuckman. *see American Dental*, 605 F.3d at 1293-94 (ignoring as conclusory allegations that "[d]efendants have not undertaken the above practices and activities in isolation, but instead have done so as part of a common scheme and conspiracy").

19

**VI.     In the Alternative, the Case Should Be Stayed and Tuckman Should Be Compelled to Arbitrate His Claims Against Wells Fargo.**

Wells Fargo understands that Defendants Chase and Torres intend to move to compel arbitration of the claims Tuckman asserts against them based on Section 14 of the Funding Agreement.[9]  To the extent Tuckman's claims against Wells Fargo are not dismissed pursuant to this motion, and to the extent Chase and Torres's motion to compel arbitration is granted, Wells Fargo respectfully moves that any remaining claims against Wells Fargo be stayed and that Tuckman be compelled to arbitrate his claims against Wells Fargo as well.  Tuckman's central theory, after all, is that Wells Fargo is liable for his losses because it conspired with Chase and Torres to cause him harm.  If Tuckman's claims against Chase and Torres are subject to arbitration, his claims against Wells Fargo should be as well.  Arbitration of the entire lawsuit also furthers the interests of judicial economy and avoids the inefficiencies attendant to parallel litigation against Chase and Torres in arbitration and against Wells Fargo in this Court.

## CONCLUSION

Wells Fargo respectfully requests dismissal with prejudice of all claims asserted against it with prejudice.  To the extent any claims against Wells Fargo are not dismissed, Wells Fargo respectfully requests that this action be stayed and that Tuckman be compelled to arbitrate his claims against Wells Fargo.

---

[9] Wells Fargo fully reserves its rights with respect to arbitration should this motion not be granted in full, including the right to file a supplemental pleading after Chase and Torres respond to the Complaint.  Nothing herein should be construed as a waiver of those rights.

Dated:  January 9, 2020                          Respectfully Submitted,

                                                 */s/ Brittney L. Difato*
                                                 Sara F. Holladay-Tobias
                                                 Florida Bar No. 0026225
                                                 stobias@mcguirewoods.com
                                                 Emily Y. Rottmann
                                                 Florida Bar No. 0093154
                                                 erottmann@mcguirewoods.com
                                                 Brittney L. Difato
                                                 Florida Bar No. 0119476
                                                 bdifato@mcguirewoods.com
                                                 MCGUIREWOODS LLP
                                                 50 N. Laura Street, Suite 3300
                                                 Jacksonville, Florida 32202
                                                 Tele: (904) 798-3200
                                                 Fax: (904) 798-3207
                                                 flservice@mcguirewoods.com

                                                 *Counsel for Wells Fargo Bank, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the

Clerk of the Court using the CM/ECF system which will send notice of the electronic filing on

January 9, 2020, to all counsel of record listed below:

Adam M. Schachter
aschachter@gsgpa.com
Freddy Funes
ffunes@gsgpa.com
Brian W. Toth
btoth@gsgpa.com
Christian G. Montelione
cmontelione@gsgpa.com
GELBER SCHACHTER & GREENBERG, P.A.
1221 Brickell Avenue, Suite 2010
Miami, Florida 33131
E-service: efilings@gsgpa.com

*Counsel for Plaintiff Brad Tuckman*

Peter W. Homer
phomer@homerbonner.com
HOMER BONNER JACOBS ORTIZ
1441 Brickell Avenue
Four Seasons Tower Suite 1200
Miami, FL 33131

*Counsel for JPMorgan Bank, N.A.*

Jonathan S. Klein
jklein@mayerbrown.com
MAYER BROWN LLP
1999 K. Street NW
Washington, DC 20006
wdc.docket@mayerbrown.com

Glenn K. Vanzura
GVanzura@mayerbrown.com
Jason D. Linder
JLinder@mayerbrown.com
MAYER BROWN LLP
350 S. Grand Avenue, 25th Floor
Los Angeles, CA 90071

*Counsel for John Torres*

*/s/ Brittney L. Difato*